IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PUERTO RICO TELEPHONE COMPANY,
INC.,

        Plaintiff

           v.                   CIVIL NO. 08-1885 (JP)

TELECOMMUNICATIONS REGULATORY
BOARD OF PUERTO RICO, et al.,

        Defendants

## OPINION AND ORDER

Before the Court are: (1) Defendants Telecommunications Regulatory Board of Puerto Rico, Nixyvette Santini-Hernández, Vicente Aguirre-Iturrino, and Sandra Torres-López's (collectively known as the "Board") motion for summary judgment **(No. 48)** as to Plaintiff Puerto Rico Telephone Company. Inc.'s ("PRTC") complaint; (2) Defendant T-Mobile Puerto Rico LLC's ("T-Mobile") motion for summary judgment **(No. 50)** as to PRTC's complaint;[1] (3) Plaintiff PRTC's motion for summary judgment **(No. 51)** as to its complaint; and (4) the oppositions, replies, and sur-replies thereto (Nos. 53, 54, 55, 56, 61, 64 and 65). This case arises from an Order issued by the Board in which it ruled that T-Mobile was entitled to receive the rates found in a tariff based on the voluntarily negotiated

---

1.    Along with its motion, T-Mobile submitted a statement of proposed material facts (No. 50-1). The Court did not consider said facts since they are unnecessary to resolve the instant dispute.

CIVIL NO. 08-1885 (JP)          -2-

Interconnection Agreements ("ICA") in 1999 and 2001 by PRTC and T-Mobile.[2]  For the reasons stated herein, PRTC's motion for summary judgment is hereby **GRANTED**, the Board's motion for summary judgment is hereby **DENIED**, and T-Mobile's motion for summary judgment is hereby **DENIED**.

**I.**

### MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts were deemed uncontested by all parties hereto in their Joint Statement of Undisputed Facts (No. 46).

1.  PRTC filed a Complaint in the instant proceeding seeking judicial review of an Order adopted by the Board on July 2, 2008 (the "Order"), in case number JRT-2007-Q-0043.  The Order was notified on July 9, 2008.

2.  PRTC is a Puerto Rico corporation with its principal place of business located in Guaynabo, Puerto Rico.  PRTC is a telecommunications carrier and an incumbent local exchange carrier ("ILEC") under the Communications Act that provides local exchange access and intra-island long distance services in Puerto Rico.

---

2.    For the purposes of these proceedings, T-Mobile is considered to be the successor in interest of Telecorp Communications, Inc., AT&T Wireless Services, Inc., and AWS Network Newco, Inc. Any reference to said companies made in the administrative record before the Court (No. 57) shall be interpreted as referring to T-Mobile and the Court will refer to all of them as T-Mobile for the purposes of this Opinion and Order.

CIVIL NO. 08-1885 (JP)            -3-

3.    T-Mobile is a limited liability company authorized to do business under the laws of the Commonwealth of Puerto Rico.  T-Mobile (formerly known as SunCom Wireless Puerto Rico Operating Company, LLC until May of 2008) is a telecommunications carrier providing wireless telephone service in the Commonwealth of Puerto Rico.  For the exclusive purposes of the above captioned judicial review, T-Mobile shall be considered as the successor in interest of Telecorp Communications, Inc., AT&T Wireless Services, Inc., and AWS Network Newco, LLC.  Only for the purposes of the above captioned case, any reference to any of these persons in the stipulated administrative record should be interpreted as referring to the same person, T-Mobile.

4.    The Board is a government agency of the Commonwealth of Puerto Rico with responsibility over telecommunications and telecommunications carriers in Puerto Rico.  The Board is a "state commission" under the Act, and its principal place of business is in San Juan, Puerto Rico.

5.    The dispute between PRTC and T-Mobile giving rise to the Board's Order and the instant case involved the pricing of certain facilities used by T-Mobile to connect its cell sites and its mobile switching office ("MTSO") and to interconnect with PRTC's network, among others, at points of interconnection ("POI").

CIVIL NO. 08-1885 (JP)          -4-

6.   The parties agreed to have the controversy disposed of summarily through dispositive motions.   The Board reiterated that agreement in an order adopted on March 12, 2008, and notified on March 25, 2008.

7.   Between March 14 and April 18, 2008, PRTC and SunCom filed their respective motions for summary judgment, oppositions and replies, which all form part of the stipulated administrative record.

8.   On July 2, 2008, and notified on July 9, 2008, the Board issued the Order regarding the parties' dispositive motions, of which PRTC now seeks review.

a.   In the Order, the Board described the facts that led to the dispute as follows:

(1)   "On the 2nd of June 1999 the parties subscribed to an Interconnection Agreement (ICA of 1999). The ICA includes a document identified as Attachment 1, titled PRTC Interconnection Agreement with Telecorp Communication, Inc. – Rate Summary and which provides a cost summary applicable to the agreement of the parties.  In its section III and in the section identified as Signal transfer point (STP) port charge makes reference to PRTC's FCC No. 1 Tariff.  It is the only reference to the F.C.C. Tariff of PRTC."

CIVIL NO. 08-1885 (JP)          -5-

(2) "SunCom requests from PRTC certain facilities that are the object of this controversy. SunCom indicates that it acquired PRTC transmission facilities to be able to reach the PRTC's points of interconnection (POI), acquiring various wide band facilities of DS-1 and DS-3. In addition, it acquired PRTC transmission facilities to transport traffic between its cells and the commuter ("MTSO"). On the other hand, PRTC identifies these facilities as: *direct transport facilities that SunCom uses to connect its cells sites to its switch and its network to points of interconnection with PRTC's network.*"

(3) "On the August 9th, 1999, PRTC writes to Telecorp, signed by Oscar Figueroa, PRTC's Manager, in which he informs that, in agreement with their request, he is including the information for the installation and monthly charges of the locations described as: Telecorp's DS-3 and DS-1 in Santurce towards PRTC in Ponce, Mayaguez, Arecibo and others there mentioned; and DS-1 from Aguadilla to Arecibo and other routes identified are included. The letter adds that the information,

CIVIL NO. 08-1885 (JP)          -6-

in reference to the rates, is based on the PRTC's Tariff FCC1."

(4)  "Oscar Figueroa's letter, PRTC's exhibit 4, includes eight (8) additional pages that are titled *Proposal for installation and monthly rent – Telecorp*, in which the last of these pages is signed by Oscar Figueroa and Awilda Gómez of PRTC. In said pages the route of the facilities, the code, the description, the amount, the unit charge and the total charge are identified. PRTC has been billing the plaintiff of the circuits that are the object of this controversy under FCC 1 Tariff since the year 1999."

(5)  "On the 3rd of January 2001 the parties signed another ICA that contains Appendix A titled Price Schedule that, the same as the ICA of 1999, makes reference to FCC 1 Tariff, Section 17, in its paragraph IV identified as *Interstate Access*."

(6)  "In October, 2002, PRTC communicates to AT&T Wireless, predecessor of the plaintiff, that in a revision of the facilities by client, it has found certain circuits that have not been billed

CIVIL NO. 08-1885 (JP)          -7-

even though the service has been rendered since the year 1999.  It indicates that a list of the facilities with their identification number and date of installation is included.     PRTC concludes that the plaintiff owes for these services $493,965.34."

(7)  "On the 10th of December 2002, PRTC, through voice of Engineer Vanessa del Valle, writes a letter to AT&T Wireless, making reference to the billing dispute.  It sustains that the plaintiff requested special services of high capacity (DS-3 and DS-1), 'that because of its nature bare a monthly rent in accordance to the local rate (Local Rate Regulation).' It also adds that 'because of an omission' various circuits were invoiced applying the FCC 1 Tariff, but that PRTC is 'working to correct said situation.'"

(8)  "On the 30th of December 2002 AT&T Wireless, through communication directed to Juan Velázquez, wrote a check to PRTC for $349,399.76 in payment for those circuits that PRTC indicated that were not billed since 1999.  It indicates that it adjusted the payment to the amount that it maintains corresponds to the

CIVIL NO. 08-1885 (JP)          -8-

FCC 1 Tariff, 'according to what was billed by the company in the past for similar facilities.' (Our own translation)."

(9)  "The parties continued their dispute regarding the cost of the facilities.  PRTC maintains that this deals with special services, excluded from the ICA, and that the NECA Tariff applies. Plaintiff maintains that these facilities are subject to "fixed rates" under Section 17 of PRTC's FCC 1 Tariff.  PRTC insists that it deals with "special services," since these circuits are used to establish the POI between PRTC and the plaintiff for interchange of local traffic, that they are subject to the Local Tariff, not to the FCC 1."

(10) "Things being this way, on the 20th of April 2004, PRTC wrote a letter to AT&T Wireless charging the sum of $633,987.65, which represents the balance of the partial payments that the company indicates had been made, regardless, according to what it alleged, that the questionings made by AT&T had been answered. Supporting its position, PRTC makes reference to the FCC 1 Tariff and its clauses regarding

CIVIL NO. 08-1885 (JP)            -9-

penalties that it alleged applies to the controversy, which they say can be activated if they do not proceed with the payment."

(11) "From the exhibits submitted in the documents we evaluated arise that the parties continued their efforts in resolving the controversy without achieving it. On its behalf plaintiff sustains that it has continued paying the circuits under FCC 1 Tariff, under the premise that that's how they have been billed in the past, marking adjustment to the invoices that PRTC was sending."

(12) "On the 8th of March, 2008, PRTC writes again to indicate that it has a pending payment balance of $1,234,470.03. In this occasion, it makes reference to the Local Tariff Regulation which it understands applies and the penalties stipulated in the Local Tariff of those unpaid balances. Regardless of the negotiations of both parties to reach an agreement, it has not materialized, for which reason SunCom has come before this Forum."

CIVIL NO. 08-1885 (JP)          -10-

      b.   Based on the aforementioned statements of facts, the Board made the following statements and conclusions of law:

      (1)   "It is our interest to resolve the dispute regarding the billing of the circuits mentioned. The stipulating motions submitted by the parties fall into our Practice and Procedure Regulations and Rule 36 of the Civil Procedure Rules, which permits to dictate a judgment summary if the allegations, depositions, answers to the interrogatories, and admissions offered, together with the sworn statements, if any, demonstrate that there is no real substantial controversy on any material act and what is left is to apply the law. <u>Pardo Santos vs. Jorge Stella Succession</u>, 145 DPR 816 (1998). With this agreement we proceed with our decision."

      (2)   "In the writings submitted by the parties, they coincide that it deals with the transmission facilities to connect networks and connect cells of SunCom to its commuter. The discrepancies arise in that PRTC alleges that it deals with what they identify as 'special facilities', excluded from the ICA, to which they argue that

CIVIL NO. 08-1885 (JP)          -11-

one of two tariffs apply: i) PRTC's FCC 1
Tariff, Section 6, or ii) PRTC's Local Tariff,
Section F-7.  To qualify for the FCC 1 Tariff,
Section 6 the requesting company must comply
with the rule of identifying the percentage of
interstate traffic that pass through said
facilities.     Not   complying   with   said
requirement, then PRTC's Local Rate applies."

(3) "PRTC alleges that, regarding the special
facilities, it proceeds to apply the Local
Tariff, Section 7 for the payment of the
circuits in controversy, since SunCom did not
comply with FCC 1 Tariff, Section 6 for the
identification of the interstate traffic.  It
argues that the billing under FCC 1 Tariff since
the year 1999 was due to 'an error'."

(4) "On the other hand, SunCom, correctly, sustains
that the facilities were quoted and billed under
the FCC 1 Tariff from the year 1999 until the
end of the year 2002.  It adds that for the
facilities subject to tariffs, like the circuits
in controversy, it is a common practice in the
telecommunications industry to make reference in
the ICA of tariffed charges without including

CIVIL NO. 08-1885 (JP)          -12-

its terms and conditions.  They also add that in the *Rate Summary*, from the ICA of 1999 as well as the one in 2001, they only make reference to the FCC 1 Tariff, section 17, showing no reference what so ever to the Section 6 to the FCC 1 Tariff or the Section F-7 of the Local Tariff."

(5) "SunCom sustains that Section 17 of the FCC 1 Tariff includes charges for services of switched access and charges for service of special access, which it alleges 'are similar for both services'.  In addition, it argues that PRTC offers the same type of service under Tariffs F-7, K-2, and FCC 1 (in the switched access and special access), having the Local Tariff F-7 is higher cost than any other."

(6) "After an analysis of the arguments and documents submitted by the parties, we conclude that, actually, PRTC billed under FCC 1 Tariff, Section 17, as it is alluded to the *Rate Summary* of the ICA, by which then it can not go against its own acts, pretending to modify the charges.  We explain ourselves."

CIVIL NO. 08-1885 (JP)          -13-

> (7)  "In the deposition taken of Mr. Oscar Figueroa, the person who quoted the circuits of SunCom on the 9th of August 1999, he admitted that the application of the FCC-1 rate was not his determination, but that he was instructed to apply it to this type of interconnection.  In addition, Mr. Figueroa in his deposition refers to billing codes to be included in the client's invoice, which we had the opportunity to examine."

> (8)  "The FCC 1 Tariff, Section 17 is titled *Access service* and contains charges for switched access services, for special access services and others.  In the letter of the 9th of August 1999, which includes nine (9) pages of proposed rates, some codes used for billing are identified.  We have revised the FCC 1 Tariff, Section 17.3 which is in effect, titled Special Access Service, and we have found that every single code identified in PRTC's Exhibit 4 by means of which the quotes for SunCom was made are included in said Section of the Tariff, obviously with actualized rates."

CIVIL NO. 08-1885 (JP)          -14-

(9)   "Therefore, we are forced to conclude that PRTC quoted and billed said facilities or services under the FCC-1 Tariff, Section 17 that is described as Special Access Service and that is the only reference to the FCC-1 Tariff in the Rates Summary of the ICA OF 1999 and 2001.  PRTC sustains that this deals with "special services" excluded for the ICA but does not explain in a convincing manner why they billed under the **FCC-1 Tariff, Section 17,** under the section of the Special Access Service."

(10)  "We are not persuaded by the arguments made by PRTC to justify the variation in billing, alleging a supposed error, after various years, and in the occasion of restructuring the wholesale department.  This result in a very simplistic argument, not endorsed by the documents submitted.  Certainly, if PRTC billed as we have been able to identify, under FCC-1 Tariff, Section 17, their acts take us to conclude that it was made in compliance with the ICA subscribed by both parties in 1999 and 2001; and not under any other Section of the FCC-1 Tariff not mentioned in the ICA."

CIVIL NO. 08-1885 (JP)          -15-

(11) "In addition to what was said before, the inconsistencies of PRTC behavior do not permit us to conclude in any other manner.  We can not ignore that even in year 2004, after two years of the controversy between both parties alleging that the FCC-1 Tariff does not apply to those circuits, it sends a letter to SunCom threatening to apply the dispositions of the same FCC-1 Tariff, which since 2002 it is arguing with the plaintiff that it does not apply."

(12) "Therefore, we conclude that PRTC's actions were in agreement with its obligations acquired under the ICA.  It subscribed a contract under which it obligated itself and acted in compliance, by which it can not pretend now to evade its obligations under arguments that are not contained in the contract and vary unilaterally the terms of the same.  In light of our judicial ordinance, the claim that PRTC pretends to make to the plaintiff does not proceed."

(13) "The ICA, like any other contract, obligates the parties to its compliance.  Our civil ordinance stipulates that the contract exist since one or

CIVIL NO. 08-1885 (JP)              -16-

more persons consent to obligate themselves in regards to other or others, to give some things, or provide some services.  The validity and the compliance of contracts can not be left to the will of one of the contractors.  In addition, it is stipulated that the contracts obligate, not only to its compliance of what was agreed upon, but also to all the consequences that, according to its nature, satisfies the good faith, the use and the law."

(14) "In consideration of what we have stipulated, this Board SOLVES AND ORDERS: We declare and UPHOLD SunCom's Motion of Judgment Summary.  In consequence, the reconvention of the complaint does not proceed."

9.   The parties stipulate that the record upon which the Board's decision will be reviewed is comprised of the documents listed at pages eight through eleven of the motion at docket number 46.  The parties also only submitted to the Court the documents which were expressly referred to in their respective motions before the Court. The documents are located at docket number 57.

CIVIL NO. 08-1885 (JP)          -17-

## II.

### LEGAL STANDARD

The parties in this case have agreed (Nos. 42 and 46) that this case is in the nature of an appeal from a closed administrative record and that this case should be resolved summarily through dispositive motions.  As such, the Court's review of this case is confined to the administrative record and the legal arguments of the parties.

Even though the parties filed cross motions for summary judgment, the standard to be applied is that found in 47 U.S.C. § 252(e)(6) because this is a judicial review of state agency determination regarding an ICA.  The Court of Appeals for the First Circuit has determined that in a judicial review of an agency determination issues of law are reviewed *de novo*.  Global Naps, Inc. v. Verizon New England, Inc., 396 F.3d 16, 23 (1st Cir. 2005).  On the other hand, other determinations by the state agency are reviewed under an arbitrary and capricious standard.  Id. at 23, n. 8.

An agency determination is deemed arbitrary and capricious where the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Automobile Insurance Company, 463 U.S. 29, 43 (1983) (internal quotation marks

CIVIL NO. 08-1885 (JP)          -18-

omitted).   Normally, the agency's determination is arbitrary and capricious:

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id.

### III.

### ANALYSIS

In the instant case, PRTC has presented a motion for summary judgment arguing that the Court should rule in its favor on its complaint and therefore vacate the Board's Order.  T-Mobile and the Board argue that their respective motions for summary judgment requesting dismissal of the complaint should be granted and, as such, that the Board's Order should be affirmed.  The Court will now consider the parties' arguments.

**A.   Board Order**

This case arises from a dispute between PRTC and T-Mobile as to the correct pricing of certain facilities (the "Facilities") used by T-Mobile to connect its cell sites and its MTSO, and to interconnect with PRTC's network, among others, at POI.  PRTC argues that T-Mobile should be billed for the use of the Facilities at the rates found in Section F-7 of PRTC's Local Tariff ("PRTC Local Tariff").  T-Mobile

CIVIL NO. 08-1885 (JP)          -19-

argues, and the Board agrees, the appropriate rates are those found in PRTC's Federal Tariff ("PRTC Tariff FCC No. 1").

T-Mobile first acquired access to the Facilities in 1999 when PRTC and T-Mobile negotiated an ICA pursuant to 47 U.S.C. §§ 251 ("Section 251") and 252 ("Section 252"). A second ICA was agreed to by the parties in 2001. Said ICAs were presented to and approved by the Board. Until 2002, PRTC provided and billed T-Mobile for the use of said Facilities under the rates found in PRTC Tariff FCC No. 1. At the end of 2002, PRTC alleges that it realized it had made a mistake by billing T-Mobile pursuant to PRTC Tariff FCC No. 1. As such, PRTC informed T-Mobile that it had billed T-Mobile incorrectly and that the applicable rates were found in the PRTC Local Tariff. T-Mobile disagreed and it stated that the applicable rates were those found in PRTC FCC Tariff No. 1.

After being unable to resolve their dispute, the parties turned to the Board in May 2007. The parties agreed to have the Board resolve the dispute summarily through dispositive motions. The Board issued its Order on July 2, 2008, which was notified on July 9, 2008. In it, the Board granted T-Mobile's motion for summary judgment. Thereafter, PRTC filed the instant action on August 8, 2008 (No. 1).

### 1.   *Board's Interpretation*

In its Order, the Board found that the applicable rates were those found in PRTC Tariff FCC No. 1. It found that, under Puerto Rico contract law, PRTC and T-Mobile reached an agreement in their

CIVIL NO. 08-1885 (JP)            -20-

1999 and 2001 ICAs in which PRTC agreed to provide T-Mobile with access to the Facilities at the rates set forth in PRTC Tariff FCC No. 1, but without the terms and conditions of said tariff.  The Board determined that PRTC could not unilaterally alter the terms of their agreements.

In reaching said conclusions, the Board relied on the evidence presented by T-Mobile that the Facilities were quoted and billed under PRTC Tariff FCC No. 1 from 1999 until the end of 2002.  Also, it relied on the fact that it is common in the telecommunications industry to make reference in the ICA to a tariff's charges without including said tariff's terms and conditions.  The Board stated that in the 1999 and 2001 ICAs there was a rate summary referencing the rates found in Section 17 of PRTC Tariff FCC No. 1 and making no reference to either Section F-7 of the PRTC Local Tariff or Section 6 of the PRTC Tariff FCC No. 1.[3]  Moreover, the Board relied on additional documentary and testimonial evidence that PRTC intended to apply the rates in PRTC Tariff FCC No. 1.  Lastly, the Board was not convinced by PRTC's explanation for the incorrect billing.

### 2.   Parties' Arguments

In its motion for summary judgment, PRTC requests that the Court overturn the Board's Order requiring PRTC to provide T-Mobile with access to the Facilities under PRTC Tariff FCC No. 1 because said

3.    Section 6 of PRTC Tariff FCC No. 1 is a section which imposes some of the additional terms and conditions that PRTC contends T-Mobile did not comply with.

CIVIL NO. 08-1885 (JP)          -21-

Order violates federal law.  PRTC argues that said Order violated federal law because the Order is contrary to and preempted by Section 203 of the Communications Act.  PRTC states that the Facilities in this case can only be provided under tariff.  As such, the Board's Order violated the filed-rate doctrine since it forces PRTC to offer services at the rates found in PRTC Tariff FCC No. 1, but under terms and conditions different than those from said tariff. PRTC argues that the appropriate rates are found in the PRTC Local Tariff.  Lastly, PRTC argues that the Board's Order violates Sections 251 and 252 of the Communications Act.

The Board and T-Mobile argue that their motions for summary judgment should be granted because the Board correctly applied Puerto Rico contract law to determine that PRTC is bound to provide the Facilities at the rates found in PRTC Tariff FCC No. 1.  Also, T-Mobile and the Board argue that allegations by PRTC of a billing error are not sufficient to unilaterally alter the ICAs freely negotiated by the parties.  Lastly, T-Mobile and the Board argue that the parties chose to include the rates set forth in PRTC Tariff FCC No. 1 as a pricing mechanism without including the terms and conditions of said tariff, and that the parties were entitled to do so because said rates were incorporated in freely negotiated ICAs.

CIVIL NO. 08-1885 (JP)            -22-

### 3.   Court's Interpretation

The Court will focus its analysis on whether the Board's Order conflicts with Section 251 and/or 252 of the Communications Act since this is the dispositive issue in this case.

PRTC argues that the Board's interpretation of the ICAs between PRTC and T-Mobile violates Sections 251(c)(2)(D) and 252(e)(2)(A)(i) because, unlike other telecommunications carriers, the Board's decision allows T-Mobile to benefit from the rates found in PRTC Tariff FCC No. 1 without having to comply with the terms and conditions set forth in said tariff.  The Board and T-Mobile oppose this by arguing that: (1) T-Mobile and PRTC's ICAs are excused from the requirements of Section 252 and 251 because they freely negotiated their ICAs; and (2) PRTC cannot bring this argument now as it never opposed the approval by the Board of the ICAs between it and T-Mobile.

After considering the arguments, the Court agrees with PRTC and finds that the Board's Order should be overturned as it is arbitrary and capricious.  The Court first notes that the Board and PRTC are correct when they state that the Board's Order did not violate Section 251(c)(2)(D).  This is the case because Section 252 exempts freely negotiated ICAs, such as the one between PRTC and T-Mobile, from having to comply with Section 251(c).  47 U.S.C. § 252(a)(1); Global Naps, Inc., 396 F.3d at 19.

CIVIL NO. 08-1885 (JP)              -23-

However, Section 252(a)(1) provides no such exception to the requirements found in Section 252(e).  Section 252(e) states that even those voluntarily negotiated ICAs cannot "discriminate[] against a telecommunications carrier [that is] not a party to the agreement[.]"  47 U.S.C. § 252(e)(2)(A)(i).  Here, there is no doubt that the Board's interpretation of the ICAs between the parties leads to discrimination against all other telecommunications carriers who are not a party to the ICAs.

The Board's decision allows T-Mobile to benefit from the rates found in PRTC Tariff FCC No. 1 without having to comply with the terms and conditions set forth in said tariff.  Specifically, T-Mobile would benefit from said rates without having to certify that at least ten percent of the total traffic routed through the facility is interstate traffic.  Said conclusion would be discriminatory to telecommunications carriers who are not a party to the ICAs between T-Mobile and PRTC because T-Mobile would be the only carrier entitled to receive such benefits (No. 57-3, pp. 35-37).  Other carriers similar to T-Mobile would have to either comply with the terms and conditions of PRTC Tariff FCC No. 1, or pay the higher rates found in the PRTC Local Tariff.

The Court notes that the argument by the Board and T-Mobile in opposition lacks merit.  Their reliance on the fact that PRTC never challenged the ICAs approved by the Board until now is misplaced. PRTC could not have brought said arguments at the time the ICAs were

CIVIL NO. 08-1885 (JP)          -24-

approved because it did not know that the Board would later interpret, as it did here, the ICAs in a fashion that would discriminate against non-parties. After the Board issued its Order endorsing the discriminatory treatment, PRTC promptly questioned the decision.

As such, the Court finds that the Board's interpretation of the ICAs between the parties conflicts with Section 252 of the Communications Act, and therefore, finds that its Order should be vacated as arbitrary and capricious. Accordingly, the Court **GRANTS** summary judgment for PRTC and **DENIES** the Board and T-Mobile's motions for summary judgment.

**IV.**

**CONCLUSION**

In conclusion, the Court **GRANTS** PRTC's motion for summary judgment and **DENIES** the Board and T-Mobile's motions for summary judgment. The Court will enter a judgment accordingly vacating the Board's Order.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of March, 2011.

                                    s/José Antonio Fusté
                                    JOSÉ ANTONIO FUSTÉ
                                    CHIEF U.S. DISTRICT JUDGE